**UNITED STATES of America**

v.

**Lloyd C. GRISCOM, Audrey Griscom, and John M. Tapers.**

**Cr. No. 2257.**

United States District Court
N. D. Florida,
Tallahassee Division.

March 11, 1958.

Harrold Carswell, U. S. Atty., Joseph N. Manners, Asst. U. S. Atty., Tallahassee, Fla., for plaintiff.

Charles S. Ausley, Tallahassee, Fla., for defendants.

DE VANE, District Judge.

The United States Attorney filed in this Court an information charging the above named defendants with unlawfully taking or attempting to take migratory game birds (mourning doves) by the aid of grain crops as a means of feeding to lure, attract or entice such birds, said grain crop having been cut and scattered as a result of operations which were not normal agricultural harvesting and in violation of United States Department of Interior Regulatory Announcement 55 (Issued September 1957), Section 6.3 (b)(9). Defendants waived jury and entered pleas of nolo contendere, thereby passing on to the Court the question of their guilt or innocence upon the record made at the trial of the case.

The pertinent part of the United States Department of Interior Regulatory Announcement 55, Section 6.3(b) (9) is as follows:

"Migratory game birds *may not* be taken—

"(9) by the aid of salt, or shelled or shucked corn or unshucked corn, wheat, or other grains, or other feed or means of feeding similarly used to lure, attract, or entice such birds to, on, or over the area where hunters are attempting to take them. As used in the preceding sentence, the terms 'shelled or shucked or unshucked corn, wheat, or other grains,' or 'other feed or means of feeding similarly used,' shall not be construed as including standing crops, * * * grain crops properly shocked on the field where grown, or grains found scattered solely as a result of normal agricultural harvesting."

The evidence in the case discloses that Lloyd C. Griscom, one of the defendants named above, is the owner of a large plantation located in Leon County, Florida. This plantation, as are numerous other plantations in this area, is used primarily as a game preserve, chiefly for quail hunting. The evidence discloses that each year several small tracts of land scattered throughout the plantation are planted to corn, chufas, Egyptian wheat, and benne. All these grain crops provide excellent feed for quail, mourning doves and other wildlife on the plantation. The defendant Griscom likewise uses these agricultural products to feed and fatten cattle and hogs during the winter season.

The offense here charged relates to only one ten acre tract of land adjoining a lake. Each year some weeks before the

hunting season opens, cattle and hogs are turned into the fields to begin the harvesting of the crops. By this process a great deal of grain from these crops is scattered on the ground by the cattle and the hogs. The Government admits that this practice is not a violation of the United States Department of Interior regulation. The evidence further shows that the corn scattered upon the ground by this process is less than would be scattered if a corn harvester was used to gather the corn, and the Government admits that the use of a corn harvester likewise would not constitute a violation of the regulation.

The livestock roaming the field likewise scattered much grain on the ground from the Egyptian wheat and benne. The hogs are supposed to root out the chufas, an agricultural product which they like very much.

The particular complaint made in this case is that the Griscom Overseer, G. L. Kennedy, with some type of powered equipment cut several rows of corn, of wheat and of benne and left it on the ground, which the Government asserts was not normal agricultural harvesting.

Kennedy testified that he has spent his entire life on a farm; that he has been Superintendent of the Griscom farm for twenty-six years, and that what he did in cutting the corn, the wheat and the benne was normal agricultural harvesting under the circumstances that compelled him to do such harvesting, and that no part thereof was done for the purpose of attracting morning doves or other wildlife on the plantation. It is his testimony, and this is not disputed by any Government witness, that sufficient grain already had been scattered by the animals in the field to attract wildlife thereto.

Kennedy gave as his reason for cutting the corn that the hogs that had been purchased to be fed and fattened on this tract of land were more attracted to the growth along the edge of the lake than to the grain growing in the field; that as a result of their rooting and eating the grass and other food found along the lake shore caused them to be infected with worms, that two had died as a result thereof and that for a time he had been compelled to take the remaining hogs off the field and treat them for worms to keep from losing more or all of them. He stated that before he returned the hogs to the field, he cut several rows of corn to lure them to the corn field and to the chufa patch and away from the lake. He testified further that his reason for cutting the rows of Egyptian wheat and benne was due entirely to the fact that because of the heavy rainy season in Florida last fall, the Egyptian wheat and benne had become diseased as a result of mildew, and he cut alternate rows of wheat and benne to allow more sunshine among the standing wheat and benne in an effort to overcome the mildew and the disease.

Kennedy (with an air of injured pride) testified most emphatically that none of this agricultural harvesting activity on his part was done for the purpose of attracting morning doves or other wildlife, but solely for the agricultural purposes stated. It should be noted here that nothing done by Kennedy constitutes a violation of any State law or regulation, and that quail hunting is the principal hunting activity on the Griscom plantation.

The Griscom plantation is located in that area of Florida which attracts Canadian geese and wild ducks, and while there is no evidence in this case that these migratory birds are hunted on the Griscom plantation, they are hunted in many other areas in Leon and adjoining counties. The United States Fish and Wildlife Service is very active in this area and has established extensive reservations for the protection of the geese and ducks that come to Florida in the winter time. It not only supervises and maintains these reservations, but on some of them it plants grain that attracts the geese, and it sells to hunters permits to go on the reservation and shoot geese attracted to these growing fields of grain. Both the National and State Wildlife Services also encourage individ-

uals to plant grain that attracts these migratory birds, and as a result of this activity, this area of Florida is a hunter's paradise for geese, ducks and mourning doves.

Counsel for the Government concedes that this is a borderline case, and neither counsel for the Government or for the defendants have called this Court's attention to any Court decision in point. The Court likewise has been unable to find any case in point.

This being a borderline case, the constitutional presumption of innocence, which attaches to every defendant charged with a criminal offense, is in itself sufficient to authorize this Court to adjudge these defendants not guilty, but the Court was unwilling to stop there. For that reason the Court has detailed the testimony in the case and is of the opinion that the testimony is insufficient to support an adjudication of guilt against these defendants.

Therefore, an appropriate judgment will be entered herein adjudging the defendants not guilty of the offense as charged.